Good morning, your honor. John Kirkland, loose forward for Plush Lounge. May it please the court, I know the court has read the briefs and the record. I would like to highlight a few points and address any questions, but first I'd like to cite the court to a new case that is directly on point. I sent a copy to counsel last night when I discovered it while shepherdizing the record. I brought copies for the court if you'd like them. The is a Northern District of California case decided in January of this year. 210 WL 147988 is the Westlaw citation. Counsel, it's Judge Gould with a question. What's the basic point that you're arguing comes from that case? The court there discussed the Aspen skiing case discussed in the briefs and stated that that case and the Verizon case demonstrate that liability under section two can arise when a defendant voluntarily offers, alters a course of dealing and anti-competitive malice motivates the defendant's conduct. And that is exactly. Counsel, let me get you to the heart of my concern with the appellant's case. It seems that once your business person, affiance statements about relevant market were excluded, then you have no Sherman Act section two case. There's no prima facie case of monopolization on your theory that the Oxford resort or the planned community is a separate geographic market. You needed that evidence in. So really, this case is more in my mind a case about federal rule of evidence 701 and federal rule of evidence 702 than it is a case of federal rule of evidence 703. I'm not sure that that is an anti-trust case because, and tell me if I'm wrong on this, but if the evidence rulings are upheld, isn't your anti-trust claim properly dismissed? No, Your Honor, and I'd like to elaborate on that. The evidence in the record shows that you have a geographically isolated facility, a discreet resort in which the defendant has a total monopoly on hotel rooms and convention visitors. But counsel, what is the evidence saying that that is the relevant geographic market? Normally, in an anti-trust litigation, like a plaintiff will have an expert economist who gives an opinion about the relevant market, which is affected by various considerations. But it takes, normally it's thought to take some specialized expertise. Yes, Your Honor, and I'll address that when talking about your 702 question. But the evidence that's in the record beyond the declarations are the admissions of the defendant's own management, that they controlled 75 to 80 percent of the total market for beverages and food and beverages within the resort area. That is because the resort is itself isolated and defendant's management stated that the Summerlin community would be too broad a market because you have this specific resort. And just like the ski resort cases, it would be inconvenient for someone to travel, to go have a drink after work. I would submit that the court is not going to go to the 3rd Street Promenade to have a drink when Old Town Pasadena is down the street. And you have the same situation here. However, Judge Gould's question is quite specific. And I guess I'm trying to say again, and second his question, without evidence by someone to say what the relevant market is, that I am then to decide whether in fact summary judgment is proper. If I have no affidavit and nobody's suggesting that this is the relevant market, any one, Sutherland or the resort, then I can't give summary judgment. Then I can't take away the summary judgment because without that evidence, there's no evidence to suggest what the market is. Well, the evidence as we cited in our briefs is the admissions by defendants themselves that they in fact control the entire market. Are you referring, when you say that, there was a deposition of William Roberts? And is that what you're referring to, that we're... Yes, Your Honor. In your question, do you believe that the resort itself constitutes its own market? And then he says, yes, I think it does. Is that what you're referring to as your evidence? Is the additional evidence outside of the two... Yes. ...experts? Yes, that and the additional testimony that they controlled 75 to 85 percent of the food and beverage within that geographic area, and further his statement that the Summerlin community would be too large, because that would be its own separate market. In addition, as Your Honor points out, there's a very significant rule of evidence issue here on the appeal. The trial judge abused his discretion by wholesale excluding the bulk of the declarations. While it's typical in antitrust cases to have an antitrust economist, it's not required, particularly in cases where you have direct evidence of intent. In most cases, you need technical expert evidence, because you don't have direct evidence of intent. You have to infer it from the circumstances. Here we have specific admissions that they treated these customers as their own customers, and we have all kinds of direct evidence that is in the record, without question, of all of their anti-competitive conduct, including their misleading statements that induced Plush to act, and misleading customers about the existence of resort, and breaching their lease obligations, and failing to put up a sign so people even knew where they were, not letting them tell people where they're located. Just like the Safeway versus Abbott case I cited you to, the Aspen skiing case, the Brett's case, a breach of contract with an anti-competitive impact is found to constitute an antitrust violation. So the one depot, assuming that the District Court didn't earn its not admitting portions of the experts, is this, the depot from William Roberts. Robertson. Is there anything else? Robertson, roughly, and the deposition testimony from the plaintiffs that was also in the excerpts of record, but primarily the admissions by defendants, that the court, let me, let me stop you again. As I read what the District Court did, the District Court had to make some determination here about whether these particular witnesses would suffice. Just if I read the qualifications of, and I call it Kattebick, and the qualifications of Pressman, and I read their qualifications, it doesn't seem to me that either declaration relates to any relevant economic or business education, which it may not necessarily need to, but it doesn't. That's my normal thing that I would get. Nor what any on-the-job training may have taught them about defining a product or geographic market, and therefore, it seems to me that I have a tough time understanding how they could give me the market. It's exactly like the NFL case, Your Honor, where Don Shula was found to be an expert witness, because he knows his customer. Gerald Pressman ran and operated two nightclubs. He knows what a nightclub customer wants. He knows what they're willing to do. He knows how far they'll drive to get it. He knows what the relevant market is. He has knowledge and experience. Counsel, Judge Gould with another question on the point you're making now. You know, what evidence is there in the record that there are any entry barriers? So that even assuming you're right that Hotspur should be viewed separately, and they have some degree of a monopoly power, like what would stop someone else from opening a nightclub across the street? As stated by Mr. Pressman, the physical layout of Summerlin and the resort make that impossible. You couldn't do it within the resort property itself, which we argue is the proper market, because they control it. And it was their change in course of conduct and refusal to deal within that market that constitutes the antitrust violation. But even in the broader That just makes it essential that, in your theory, that you have adequate evidence to that the resort or the Hotspur place itself, that that's a market. Yes, Your Honor. And Mr. Pressman's declaration and Mr. Katowick's declaration both talk about, based on their skill and experience with this specific geographic area and this specific business, the nightclub business, they know their customer, they know what they want to what someone will reasonably actually do to get these specific products and services. And that is the essence of an expert opinion, and it's also admissible as a lay opinion because Mr. Pressman was operating his own business. So he could see on a day-to-day basis exactly what was going on. He interacted with the customers. He spoke to them. He knows that you're not going to go out of your way to pick up a drink after work. You're actually out of time, so if you could just wrap up. Thank you, Your Honors. In summary, the lower court erred by finding that you could not have an antitrust violation when you own the property at issue. That's akin to saying, because I own a business, I can discriminate in hiring based on race or gender. Because I own the land, I can build a building that can only access through stairs without putting in an elevator. The fact that you own the property doesn't entitle you to violate the antitrust laws. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Andrew Pauly, and I represent defendant and appellee, Hotspur Resorts, Nevada, Inc. Your Honors, whatever claim Plush Lounge may have, and we believe it's actually none, it's certainly not a Section 2 Sherman antitrust claim for relief. As this Court knows, the antitrust laws focus on protecting competitive process, not on the success or failure of an individual competitor. Antitrust claims are quite different than run-of-the-mill business torts and contract claims, and they are certainly not coextensive. And no matter what Plush Lounge may try to do to dress up this claim as an antitrust claim, it can't, it couldn't, and it didn't. Its antitrust claim is fatally flawed for numerous different reasons. This did not come up in Mr. Kirkland's discussion with you, the Bell Atlantic Twombly case. On the face of this pleading, the claims asserted against Hotspur are no more plausible, they're not even conceivable. Is there a case in the Ninth Circuit that says that, what the District Court said, which says there can't be an antitrust? No, I don't believe there's a Ninth Circuit case that's on all fours. There are cases from outside the Circuit dealing with shopping centers, the United Center in Chicago. But there's some shopping center cases, I think, outside the Circuit that say even when the landowner owns the whole property, there can be antitrust violation on that, within that shopping center. Is that right? I don't recall seeing a case like that, Your Honor. I recall the cases going the other direction, talking about that the shopping center owner can decide who they're going to lease to and under what terms and conditions they're going to lease. I mean, it happens all the time with exclusivity provisions to markets and major shopping centers, to anchor tenants, things of that nature. So I'm not familiar, as you indicated, with court cases that talk about shopping mall owners being subject to Section 2 liability. Counsel, it's Judge Gould with a question for you that is along the lines of Judge Aikuda's question. You know, I don't know if the District Court's line of reasoning, that while they own the property, that it can't be an antitrust violation. Is, you know, the traditional law or is something that you can find clearly in any Supreme Court or Circuit Court opinion? I tend to think it's not. So if you're aware of any, you know, then I'd appreciate hearing what it is. So I think, you know, the claim may be a bad claim in the appeal, a bad appeal, but that doesn't mean the District Court's reasoning was the correct reasoning. For me, it seems that the problem is on this record. There's no showing because of the evidence rulings that there was monopolization in a relevant market. There's no showing that there were entry barriers that would have stopped other nightclub owners from, you know, putting a nightclub, if not in the resort, right adjacent to it, somewhere where it wouldn't be a 30-minute drive. So, I mean, from my perspective as one judge, I would like to hear you focus on the Rule 701 and Rule 702 issues because at least for me, that's where the case is. Your Honor, I think that the exclusion of the Katowick and Pressman declarations was entirely proper. And in fact, given the standard for abuse of discretion that this Court is undoubtedly conversant with, meaning that the judge's decision has to be deemed to be either arbitrary, fanciful, or unreasonable in order to overturn that evidentiary exclusion, I don't think we're anywhere close to that standard today. I think Judge Wu made a reasoned approach. He looked at the declarations. He was looking for an actual expert, excuse me, who had the ability to analyze market issues, who showed what his opinions were based on, who showed what facts he looked at, who showed his market survey. None of that was in these declarations, including the one that was submitted within a day or two before the summary judgment hearing. So the declarations didn't have bells and whistles. They didn't have the PhD. They didn't have the charts and the graphs. But here's a person comes in and says, I've been in this business for, you know, 20, 30 years. I know what the market is like. Why does it have to have a PhD after his name in order to be legitimately based on a reasonable calculation of what the market is? My understanding, and I'm not as conversant with antitrust law as this panel is, but my understanding is that the focus for the market analysis, let's just deal with the market analysis, is not on the purveyor. It's on the market itself in terms of what that market is in the relevant geographic area, which we respectfully submit is the entire Las Vegas metropolitan area. So he says people won't drive that far, and he's basing it on his experience as opposed to a survey of consumers. Why is that improper? Well, their own private placement memorandum is diametrically inconsistent with that, Your Honor, where they say they're going to draw customers for the entire Las Vegas metropolitan area. Well, that may go to the weight of contradiction in their testimony, but I don't see how that expert's declaration is valid or not. Well, but it goes to the notion of what facts is the supposed expert basing that testimony on that people won't make the drive? There aren't any facts in this declaration. If you go back and look at the declarations, Katowick and Pressman, and you highlight those areas that Judge Wood struck the testimony, you will see that the assertions there are entirely conclusory. There is no factual foundational support for the opinions that are proffered in those declarations. They were not what you'd expect to see in an antitrust case to beat a summary judgment motion on the issue of relevant market, not to mention, to take Judge Gould's point, which is there's no evidence of market power. There's no evidence of causal antitrust injury. There's nothing to meet all of the elements that were necessary, and we have to remember, and I hate to use the overtired term, cell attacks before this Court, but the burden was on the plaintiff to come in with admissible, solid evidence beyond a preponderance to prove their claim at the summary judgment phase, and they didn't do that. So Your Honors, I don't think they carried their burden under 56E. I don't think they did that. And it's clear to me that, and I would respectfully submit that Judge Woo analyzed, took his time to analyze, looked at the evidentiary objections. It's not like we have a jurist who is just wholesale sustaining all of our evidentiary objections. He picked and chose what he wanted to sustain, including one that these experts were never identified as experts, as required under Rule 26. So I don't think that there's any evidence to sustain product markets. I don't think there's any evidence to sustain a geographic market. I don't think there's any evidence to show that we have an antitrust case here in any way, shape, or form. Unless the Court has other questions, I would secede. I don't have other questions. Thank you. Well, I guess I have one. Okay. I have one question, Counsel. Yes, Your Honor. That is, assuming we were to reverse the judge on the evidence rulings, and assuming that these affidavits were admissible evidence and said what they said, would you still say that this affidavit advanced the District Court's reasoning about no antitrust violation by an owner of a property on what they do on their property? I don't know that I would go that far, Your Honor. Although, under the facts of this case, and I'd again counsel you to look at the – Plush Lounge wants you to think that this place is out in the middle of the Gobi Desert. Their private placement memorandum indicates, Your Honor, the intersection where they're located is going to have an average cars per day going by it of 32,500 cars per day. This is not an isolated area. This is part of a major metropolitan area. Their own private placement memorandum tells you what their target market is, which is the entire Las Vegas metropolitan area. They were competing with hotels on the Strip, hotels elsewhere. So, Your Honor, even if those declarations came in, again, we've seen the Mall cases and the United Airlines, the Arena case, and I do not think that the evidence, even if those declarations came in, is sufficient to deny summary judgment under the circumstances. Thank you. Okay. The case of Plush Lounge v. Hotspur Resorts is submitted. Thank you for your time. Thank you, Your Honor. And we'll next hear Regency Outdoor Advertising v. City of Los Angeles.
judges: Gould, Ikuta, Smith N. R.